NO. 12-04-00131-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
§APPEAL FROM THE 
IN THE MATTER OF
§COUNTY COURT AT LAW #3
 
D.J., A JUVENILE                                            §                 SMITH COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            D.J., a juvenile, appeals the trial court’s judgment finding that she engaged in delinquent
conduct, for which she was sentenced to commitment to the Texas Youth Commission for an
indeterminate period. D.J. raises two issues on appeal. We affirm.
 
Background
            In its second amended petition, the State alleged, among other matters, that D.J. engaged in
delinquent conduct in that she violated penal law. Specifically, the State alleged that on
December 10, 2003, D.J. committed the offense of fraudulent use of identifying information in that
she, with intent to harm or defraud another, and without the consent of Evelyn Pinkard, used
identifying information of Pinkard’s driver’s license number, social security number, Medicare card,
and credit cards, by presenting said identifying information to unlawfully open a checking account
in Pinkard’s name for her own access and use. D.J. pleaded “not true,” and the matter proceeded to
jury trial.
            At trial, Edgar Chavez, a sales associate for Community Credit Union in Dallas County,
Texas, testified on the State’s behalf. Chavez testified that D.J. entered the credit union on
December 10, 2003. Chavez identified D.J. as the person who presented herself as Evelyn Pinkard
that day and further testified that D.J. signed Pinkard’s name on the sign-in sheet and told Chavez
she wanted to open a checking account and order a box of checks. According to Chavez, D.J.
provided him with a social security card and what resembled a Texas identification card. Chavez
verified that the driver’s license number on the card matched with the name Evelyn Pinkard. Chavez
also checked the social security card and discovered that it was issued prior to the date of birth listed
on the card. Chavez contacted the credit union’s fraud department and was instructed to contact the
police department. Meanwhile, Chavez continued to visit with D.J. about banking with the credit
union until the police arrived. Chavez could not recall whether D.J. had signed a signature card, but
stated that she had “completed all that paperwork” that one would ordinarily complete. Chavez
testified that D.J. did not ultimately open a checking account at the credit union although she
attempted to do so.
            Grand Prairie Police Department Officer Brian Bossheart also testified for the State. 
Bossheart testified that on the date in question, he and Officer Jason Gray responded to a call at the
credit union. When they arrived, they spoke with the representative of the credit union who advised
them that someone was there trying to open an account and the identification documents did not
appear to be true and correct. Bossheart testified that D.J. showed him and Gray some credit cards
and a Medicare card that had the name Evelyn Pinkard on them.
            Evelyn Pinkard testified that she was the victim of a robbery at a restaurant in Lancaster,
Texas in November 2003, during which her wallet, containing her identification, social security card,
Medicare card, and some credit cards, was stolen. Pinkard testified that she did not know D.J. and
did not give D.J. her consent to use her social security card or any other identification cards to open
a checking account.
            After the State rested its case, D.J. moved for a directed verdict. The trial court denied D.J.’s
motion. Following the close of evidence, the trial court conducted a charge conference. D.J.
requested that the lesser included offense of attempted fraudulent use of identifying information be
included in the charge. The trial court denied D.J.’s request. Ultimately, the jury found D.J. engaged
in delinquent conduct by committing the offense of fraudulent use of identifying information. The
trial court sentenced D.J. to commitment to the Texas Youth Commission for an indeterminate
period. This appeal followed.
 
Legal Sufficiency
            In her first issue, D.J. argues that the trial court erroneously denied her motion for directed
verdict because the evidence was legally insufficient to support the jury’s finding.


 Legal sufficiency
is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to
sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-787, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d 1, 6 (Tex. App.–San Antonio
1999, pet. ref’d). The standard for reviewing a legal sufficiency challenge is whether any rational
trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See
Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v. State, 871 S.W.2d 183, 186 (Tex.
Crim. App. 1993). The evidence is examined in the light most favorable to the jury’s verdict. See
Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186. A successful legal
sufficiency challenge will result in rendition of an acquittal by the reviewing court. See Tibbs v.
Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-218, 72 L. Ed. 2d 652 (1982).
            To support the jury’s finding that D.J. engaged in delinquent activity by committing the
offense of fraudulent use of identifying information, the State was required to prove that D.J. (1)
with intent to harm or defraud another, and (2) without the consent of Evelyn Pinkard, (3) used
Pinkard’s identifying information. See Tex. Pen. Code Ann. § 32.51(b) (Vernon Supp. 2004–05). 
“Identifying information” means information that alone or in conjunction with other information
identifies an individual including an individual’s name, social security number, date of birth, and
government-issued identification number. See Tex. Pen. Code Ann. 32.51(a)(1)(A) (Vernon Supp.
2004–05).
            D.J. argues that the proof at trial varied from the court’s charge and the allegations in the
State’s petition. The sufficiency of the evidence is measured against the offense as defined by a
hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
Such a charge would include one that “accurately sets out the law, is authorized by the indictment,
does not unnecessarily increase the State’s burden of proof or unnecessarily restrict the State’s
theories of liability, and adequately describes the particular offense for which the defendant is tried.”
Id. The hypothetically correct jury charge need not incorporate allegations that give rise to
immaterial variances. See Gollihar v. State, 46 S.W.3d 243, 255–56 (Tex. Crim. App. 2001). Thus,
we must determine whether there exists a variance in the allegation in the charging instrument and
the proof at trial. If we determine that such a variance exists, then we must determine if such a
variance is material and prejudices the defendant’s substantial rights. Id. at 256–57. That is, we
must determine whether the charging instrument, as written, informed the defendant of the charge
against him sufficiently to allow him to prepare an adequate defense at trial and whether prosecution
under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted
later for the same crime. Id. at 257.
Variance
            In the case at hand, the jury was asked to find whether D.J., with intent to harm or defraud
another, and without the consent of Evelyn Pinkard, used identifying information of Evelyn
Pinkard’s driver’s license number or social security number, by presenting said identifying
information to unlawfully open a checking account in the name of Evelyn Pinkard. Therefore, D.J.
argues, the State was required to prove that D.J. did, in fact, open a checking account in the name
of Evelyn Pinkard. 
            Section 32.51(a)(1)(A) requires only that the actor use the information with intent to harm
or defraud another. Here, Chavez testified that since credit unions are nonprofit organizations, if the
credit union has any profits, it has to send the profits back to its members with a higher interest paid
on deposits or a lower interest rate on loans. Thus, Chavez explained, when someone defrauds the
credit union, the credit union takes a loss, which in turn, effects all of its members. Chavez further
testified that the use of someone else’s name can harm the person whose name is used. 
            We disagree that the language “by presenting said identifying information to unlawfully open
a checking account” required the State to prove that D.J. accomplished what the record reflects she
set out to do. Our reading of the court’s charge does not indicate that the charge varied from the
elements of the statute. Rather, we read the court’s charge as asking whether D.J. used Pinkard’s
identifying information by presenting said identifying information for the purpose of unlawfully
opening a checking account in the name of Evelyn Pinkard. In light of Chavez’s testimony, a finding
that D.J. acted with such a purpose satisfies the element that D.J. acted with intent to harm or defraud
another.



            Moreover, our reading of the charge conforms with the notion of a hypothetically correct
charge, which, to iterate, is one that accurately sets out the law and does not unnecessarily increase
the State’s burden of proof. Requiring that the State prove that D.J. caused harm where the statute
only requires that the State prove that the appellant intended to harm or defraud another would run
afoul of the standard set forth by the court in Malik. Therefore, we conclude that no variance
existed.



            The record reflects that D.J., without Pinkard’s consent, intentionally used Pinkard’s driver’s
license and social security card for the purposes of opening a checking account at a credit union for
D.J.’s own use. The record further reflects that such activity harms credit union members as well
as the person whose identifying information is used. Thus, we hold that the evidence was legally
sufficient to support the jury’s finding that D.J. engaged in delinquent conduct by committing the
offense of fraudulent use of identifying information. D.J.’s first issue is overruled.
 
Lesser Included Offense
            In her second issue, D.J. argues that the trial court erred in not including attempted fraudulent
use of identifying information in its charge as a lesser included offense. An offense is a lesser
included offense if (1) it is established by proof of the same or less than all the facts required to
establish the commission of the offense charged; (2) it differs from the offense charged only in the
respect that a less serious injury or risk of injury to the same person, property, or public interest
suffices to establish its commission; (3) it differs from the offense charged only in the respect that
a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to
commit the offense charged or an otherwise included offense. Tex. Code Crim. Proc. Ann. art.
37.09 (Vernon 1981). 
            Whether a charge on a lesser included offense is required is determined by a two-pronged
test. See Schweinle v. State, 915 S.W.2d 17, 18 (Tex. Crim. App. 1996). First, we must determine
whether the offense constitutes a lesser included offense. Second, the lesser included offense must
be raised by the evidence at trial. Id. In other words, there must be some evidence which would
permit a rational jury to find that if guilty, the defendant is guilty only of the lesser offense. Id.
            In the case at hand, D.J. argues that there is some evidence for the jury to find that D.J. only
attempted to use the identifying information to unlawfully open a checking account. However, D.J.’s
argument on her second issue is related to her argument concerning her first issue. In other words,
D.J. argues that the record supports that she attempted, but did not succeed in opening a checking
account. However, the crime of attempted fraudulent use of identifying information would require
evidence supporting that D.J. only attempted to use the identifying information. The record in the
instant case supports only that D.J. did, in fact, use Pinkard’s identifying information with the intent
to defraud or harm another. Thus, the evidence would not permit the jury to find that if guilty, D.J.
was only guilty of attempted fraudulent use of identifying information. Therefore, we hold that the
trial court did not err in refusing D.J.’s request that it submit such a lesser included offense. D.J.’s
second issue is overruled.
 
Disposition
Having overruled D.J.’s first and second issues, we affirm the trial court’s judgment.
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
Opinion delivered September 30, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.


(PUBLISH)