RECEIVED IN
COURT OF CRIMINAL APPEALS

June 17, 2015

ABEL ACOSTA, CLERK

**NO. PD-0551-15**

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## AT AUSTIN

-------------------------------------------------------------

**NO. 14-13-00921-CR**

# IN THE COURT OF APPEALS FOR THE

# FOURTEENTH DISTRICT OF TEXAS

## AT HOUSTON

-------------------------------------------------------------

MARQUE JAMAL COLEMAN,        APPELLANT

V.

THE STATE OF TEXAS,        APPELLEE

-------------------------------------------------------------

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

-------------------------------------------------------------

**Danny K. Easterling**
Easterling & Easterling, P.C.
Texas Bar No. 06362100
1018 Preston, 6th Floor
Houston, TX 77002
(713)228-4441
E-mail:eaepc@swbell.net
Counsel for Appellant,
Court-appointed on appeal.

## ORAL ARGUMENT REQUESTED.

# STATEMENT REGARDING ORAL ARGUMENT

The appellant requests oral argument because of the novelty and importance of the issues presented.

# LIST OF INTERESTED PARTIES

| | |
|---|---|
| Marque Jamal Coleman | Appellant, Defendant in trial court |
| Cheryl Irvin<br>917 Franklin, Fourth Floor<br>Houston, TX 77002 | Appellant's Counsel at trial |
| Equator L. Turner<br>440 Louisiana, Suite 900<br>Houston, TX 77002 | |
| Danny K. Easterling<br>1018 Preston, 6th Floor<br>Houston, TX 77002 | Appellant's counsel on appeal |
| Devon Anderson<br>1201 Franklin, Suite 600<br>Houston, TX 77002 | Harris County District Attorney |
| Stuart Ladner<br>Gretchen Flader<br>Melissa Hervey | Assistant District Attorneys |
| Hon. Leslie Brock Yates | Visiting Judge, 174th District Court<br>Harris County, Texas |

# TABLE OF CONTENTS

Statement Regarding Oral Argument     i

List of Authorities     iv

Statement of the Case     1

Statement of Procedural History     2

Questions Presented     2

    1. Did the Court of Appeals err in holding that the appellant was not entitled to the submission of a jury instruction on Theft from Person as a lesser included offense because evidence did not directly address the appellant's state of mind?

    2. Did the Court of Appeals' err in holding that an instruction to disregard evidence sufficiently cured guilt-stage testimony indicating that Coleman had some connection with a gang?

Argument     3

Reasons for Review of Question One     3

    A. The Applicable Law     3

    B. The Scintilla – or More – of Evidence     5

    C. The Court of Appeals' Narrow View of the Standard     5

Reasons for Review of Question Two     9

    A. The Applicable Law     9

    B. The Improper Revelation     11

    C. The Inadequacy of an Instruction     12

Prayer for Relief                                                    15

Certificate of Compliance                                            15

Certificate of Service                                               16

Appendix: Court of Appeals' Memorandum Opinion and Judgment

# LIST OF AUTHORITIES

| Cases | Page |
|---|---|
| *Allen v. State*, 513 S.W.2d 556 (Tex. Crim. App. 1974) | 14 |
| *Anderson v. State*, 901 S.W.2d 946 (Tex. Crim. App. 1995) | 11 |
| *Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) | 10 |
| *Dawson v. Delaware*, 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992) | 10 |
| *Earls v. State*, 707 S.W.2d 82 (Tex. Crim. App. 1986) | 4 |
| *Fuller v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992) | 10-11 |
| *Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007) | 3-4, 10 |
| *McKay v. State*, 707 S.W.2d 23 (Tex. Crim. App. 1985) | 11-12 |
| *Nguyen v. State*, No. 14-11-00706-CR, 2012 WL 3043063, at *3 (Tex. App.—Houston [14th Dist.] July 26, 2012, pet.ref'd) | 9 |
| *Schweinle v. State*, 915 S.W.2d 17 (Tex. Crim. App. 1996) | 4 |
| *United States v. Lemon*, 723 F.2d 922 (D.C. Cir. 1983) | 11 |
| *Wesbrook v. State*, 29 S.W.3d 103 (Tex. Crim. App. 2000) | 12 |

| Constitutional Provisions, Statutes, and Rules | |
|---|---|
| TEX. CODE CRIM. PROC. Art. 37.09 | 3 |
| TEX. CONST. Art. I, §10 | 8-9 |
| TEX. PENAL CODE §6.03© | 7 |
| TEX. PENAL CODE §6.03(d) | 7 |

TEX. PENAL CODE §29.02(a)(1)                                        5

TEX. PENAL CODE §31.03(e)(4)(B)                                     4

TEX. R. APP. PROC. 66.3(b)                                        6-7

U.S. CONST. Amend. V                                              8-9

**TO THE COURT OF CRIMINAL APPEALS OF TEXAS:**

COMES NOW the appellant, Marque Jamal Coleman (hereinafter "Coleman"), through the undersigned court-appointed counsel on appeal, and respectfully requests that this Court grant discretionary review of the decision in this cause by the Court of Appeals for the Fourteenth District of Texas, for reasons set forth as follows.

## STATEMENT OF THE CASE

Coleman was indicted for Robbery in Cause Number 1347307 in the 174th District Court of Harris County, Texas (CR-9).1 A jury found Coleman guilty as charged (CR-607). At the punishment stage Coleman stated that two enhancement allegations relating to prior felony convictions were true (RR V-5). Coleman also stipulated that he had other prior convictions for diverse offenses (RR VIII, Exh. 1). The visiting trial judge, Hon. Leslie Brock Yates, assessed punishment at confinement for thirty years in the Texas Department of Criminal Justice, Correctional Institutions Division (CR-609). Coleman gave timely notice of appeal (CR-614).

On appeal Coleman presented two points of error. First he argued that the trial court judge should have instructed the jury on Theft from Person as a lesser included offense for the charged offense of Robbery. Coleman also argued that a

---

1 The clerk's record containing court documents is designated by "CR" herein. The reporter's record is designated by "RR." with Roman numerals for volume numbers. The Court of Appeals' memorandum opinion is designated by "Mem. Opin."

detective interjected error into the proceedings when she revealed that a photo of Coleman was taken from a "gang tracker database." The Court of Appeals overruled both points of error and affirmed the judgment and sentence in a memorandum opinion.

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals rendered its decision and delivered its memorandum opinion on April 16, 2015. No motion for rehearing was filed. This Court extended the time for filing a petition for discretionary review until June 17, 2015.

## QUESTIONS PRESENTED

This petition presents two questions for review:

1. Did the Court of Appeals err in holding that the appellant was not entitled to the submission of a jury instruction on Theft from Person as a lesser included offense because evidence did not directly address the appellant's state of mind?

2. Did the Court of Appeals' err in holding that an instruction to disregard evidence sufficiently cured guilt-stage testimony indicating that Coleman had some connection with a gang?

2

# ARGUMENT

## REASONS FOR REVIEW OF QUESTION ONE

**Did the Court of Appeals err in holding that the appellant was not entitled to the submission of a jury instruction on Theft from Person as a lesser included offense because evidence did not directly address the appellant's state of mind?**

## A. The Applicable Law

*Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007), observed that TEX. CODE CRIM. PROC. Art. 37.09 sets forth the ways in which an offense may constitute a lesser included offense of the offense charged in the indictment. An offense is a lesser included offense if:

> (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
>
> (2) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
>
> (3) It differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
>
> (4) It consists of an attempt to commit the offense charged or an otherwise included offense.

Under *Hall, supra* at 531, "when the greater offense may be committed in more than one manner, the manner alleged will determine the availability of lesser-included offenses. In this cause, for example, the indictment alleged that Coleman

3

caused bodily injury, rather than threatening it, so the analysis must focus on what lesser offenses might apply to that form of Robbery.

*Hall* specifically held that the determination as to whether a charged offense includes another particular offense as a lesser included offense, under the first alternative in Article 37.09, "should be made by comparing the elements of the greater offense, as the State pled it in the indictment, with the elements in the statute that defines the lesser offense." *Id.,* at 525. The controlling test is whether "the elements of the lesser offense are established by proof of the same or less than all the facts required to establish the commission of the charged offense." *Id.,* at 536. In this cause the State conceded – and the Court of Appeals held (Mem. Opin., p. 4) – that the offense of Theft from Person, under TEX. PENAL CODE §31.03(e)(4)(B), can be a lesser included offense of Robbery. This Court had so held in *Earls v. State*, 707 S.W.2d 82 (Tex. Crim. App. 1986).

That statute-based determination is the first step in a two-step analysis. The second step is to determine whether or not a lesser included offense has been raised in a particular case. The test for this second step is whether there is "some evidence which would permit a rational jury to find that if guilty, the defendant is guilty only ofthe lesser offense." *Schweinle v. State*, 915 S.W.2d 17 (Tex. Crim. App. 1996). "Anything more than a scintilla ofevidence from any source is sufficient to

4

entitle a defendant to submission of the issue." *Id.* The Court of Appeals held that this prong of the test was not met and therefore overruled the point of error.

## B. The Scintilla – or More – of Evidence

Hortensia Garza testified that she was returning home from work at around 2 a.m. on April 28 2012 (RR III- 13-14). Garza had parked her car at her apartment complex and was walking toward her apartment. As she got close to her apartment a man appeared, about only two feet from her (RR III-23). She thought he was a resident and smiled at him but did not say anything (RR III-23). As the man walked past, he tried to grab a backpack that Garza was carrying over her left shoulder (RR III-26). Garza "fought" to keep the backpack for about 30 seconds until the man "shoved" Garza in the face with the palm of his hand (RR III-28). That knocked Garza down, and the man ran off with the backpack. As a result of falling to the ground, Garza hit her head, but she did not claim any injury from that (RR III-29). Garza broke a finger as she landed on the ground (RR 111-29-30). Garza identified the appellant in court as the man who assaulted her (RR III-30).

## C. The Court of Appeals' Narrow View of the Standard

Coleman argued in the Court of Appeals that there was some evidence that he shoved Garza without having the *mens rea* required for Robbery under TEX. PENAL CODE §29.02(a)(1), *i.e.*,"intentionally, knowingly, or recklessly" causing

5

bodily injury. Coleman argued that his goal was to steal, not to hurt Garza. There was at least some indication that Garza fell, and thereby broke her finger, because of her size and weight. Garza said "I am short, but I got some weight on me. In order to knock me down, you have to push me hard."

Another indication that Coleman only intended to make a quick grab and run off to the escape vehicle with his plunder was his method of walking past and catching Garza off guard. Coleman pushed Garza instead of using the kind of fighting blows like punching, kicking, *etc.*, which would be more consistent with an intent to actually injure someone. The act of pushing may indicate a mere desire to create distance between the assailant and the victim, thus preventing hand-to-hand resistance and giving the assailant a head start in any ensuing chase.

The Court of Appeals nevertheless declined to consider testimony about the physical contact and how it led to a broken finger as evidence which might go to the question of *mens rea*, stating:

> Garza's testimony only speaks to causation, not Coleman's mental state as to whether he intended to cause Garza bodily injury.

(Mem. Opin., pp. 6-7). But did the testimony *only* have relevance to causation?

This Court is presented with an important but unsettled legal question: May the "scintilla" of evidence to show a lesser culpable mental state, and thus justify a jury instruction, consist of *indirect* or circumstantial evidence regarding actions

6

and consequences? By effectively holding that it may not, the Court of Appeals is giving too narrow a reading to the second prong of the test for entitlement to an instruction. This is an issue worthy of this Court's examination under TEX. R. APP. PROC. 66.3(b).

Consider the difference between "recklessness" (which is the lowest of the three levels of *mens rea* for Robbery under the "causes injury" prong of the statute) and "criminal negligence." TEX. PENAL CODE §6.03(c) provides:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

In the context of a Robbery prosecution based on "causing" injury, the recklessness would apply to the *result* of conduct, *i.e.* causing the particular injury suffered by the complainant. Criminal negligence, under TEX. PENAL CODE §6.03(d), is distinguishable in that the actor need not actually be "aware" of the risk. It is applicable when a reasonable person ought to be aware of the risk.

An actor's state of mind often is suggested by his specific actions and/or by the circumstances of an encounter. The State has advanced that proposition in thousands of jury arguments over the years, and that logic is well embedded in case

7

law too. Should not the same principle apply when the issue is whether another offense may be indicated? In this cause Coleman's actions do not indicate that he actually was aware that his "push and grab" theft technique was designed to cause injury. Nor does the evidence indicate that the risk that Garza could break her finger by falling was a "substantial" one in a "push and grab" theft.

Thus some of the evidence pointed more towards criminal negligence than it pointed towards recklessness with respect to physical injury. That should be enough to justify a lesser included offense instruction, for the only way to raise the question of a lesser *mens rea* and actually rule out a greater *mens rea* would be for the defendant to testify. Surely the second prong of the test should not be pushed to the point where it virtually requires a defendant to testify, since that would undermine constitutional rights under U.S. CONST. Amend. V and TEX. CONST. Art. I, §10.

Coleman realizes that it could be argued that, if the *mens rea* of recklessness is doubtful, the trial court should simply instruct that reasonable doubt on the *mens rea* requires acquittal. In practice, however, it is likely that a jury will not completely acquit a defendant who is shown to have committed at least a state jail felony offense. Furthermore, for defense counsel to have to argue for a complete acquittal, based on a lack of clarity as to whether a defendant was reckless or only

8

criminally negligent, would itself be perilous to the Fifth Amendment privilege (and the similar privilege under Article I, Section 10), for the jury would know that only one person could give testimony making such a fine distinction.

In fact, a case cited by the Court of Appeals suggests that even abandoning constitutional protections might be to no avail in obtaining an instruction on the theory of a lesser offense. A memorandum opinion, *Nguyen v. State*, No. 14-11-00706-CR, 2012 WL 3043063, at *3 (Tex. App.—Houston [14th Dist.] July 26, 2012, pet.ref'd) was cited as "holding that [the] defendant was not entitled to a lesser included offense instruction because the evidence showed that he acted intentionally, despite claiming that 'he never intended to harm the complainant.'"

Finally, there is room here even for a more fundamental consideration of whether the "guilty only" element of the standard needs to be reconsidered, or at least not applied to charge requests centered on *mens rea*. In the long run that would simplify the law, aid jury deliberations, and avoid some appellate litigation, all at the relatively small cost of adding a page to some jury charges. Whatever the right solution is, the first step is to grant discretionary review.

## REASONS FOR REVIEW OF QUESTION TWO

**Did the Court of Appeals err in holding that an instruction to disregard evidence sufficiently cured guilt-stage testimony indicating that Coleman had some connection with a gang?**

### A. Applicable Law

It is a cardinal principle of criminal law that a felony defendant should be tried for the offense charged in the indictment. *Hall, supra* at 532 called this principle an "ancient doctrine of both the common law and of our Constitution." One way in which this doctrine can be breached is through evidence which improperly reveals other criminal conduct or suggests the bad character of the defendant at the guilt stage of trial. One type of such evidence is testimony which links a defendant to organized criminal activity or to a group identified as a "gang" by the police.

In *Dawson v. Delaware*, 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992), the Supreme Court held that evidence showing that Dawson was a member of a prison gang affiliated with the Aryan Brotherhood was not relevant to sentencing, *Dawson* distinguished cases such as *Barclay v. Florida*, 463 U.S. 939,103 S.Ct.3418,77 L.Ed.2d 1134 (1983), where the crime was a racially-motivated murder. In the wake of *Dawson*, this Court has approved of introducing gang-affiliation evidence in some cases. In *Fuller v. State*, 829 S.W.2d 191 (Tex.

10

Crim. App. 1992), the Court appeared to approve a three-part relevancy test for admission of such evidence, derived from *United States v. Lemon*, 723 F.2d 922,941 (D.C. Cir. 1983), although *Fuller* is a little murky in that respect because the issue in *Fuller* ultimately was decided on the basis of procedural default. Under the *Lemon* test, evidence of group affiliation is not to be admitted at the punishment stage unless it establishes that (1) the defendant is a member of the group, (2) the group's aims are illegal, and (3) the defendant intended to further those illegal aims. *Fuller, supra; Lemon, supra. See also Anderson v. State*, 901 S.W.2d 946 (Tex. Crim. App. 1995). It has never been suggested by this Court that proof of the *Lemon* factors would be sufficient to justify admission of gang affiliation evidence at the guilt stage of trial.

As with other evidence, a witness could step over the line and introduce the fact of gang affiliation. As with other improper, an objection is required, and if it is sustained, then the trial court judge should be requested to give an instruction that the jury must disregard the improper testimony. Once that is done, the question becomes whether a requested mistrial also should be granted. That issue is the basis for this point of error.

The Court of Appeals accurately summarized the general rule in this area, stating:

> Generally, any error resulting from improper testimony is cured by an instruction to disregard the same except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of

11

the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds. *McKay v. State*, 707 S.W.2d 23, 36 (Tex. Crim. App. 1985). In most instances, an instruction to disregard the remark will cure the error. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "Only offensive or flagrant error warrants reversal when there has been an instruction to disregard . . . ." *Id.* at 116.

The question is whether that general rule should apply.

## B. The Improper Revelation

Coleman was tracked down through information about a vehicle which was used in his escape. Houston Police Detective S. Spivey testified that a photo of Coleman's picture was in a "gang tracker" database used by the Houston Police (RR IV-31-32). Spivey mentioned discovering "all the evidence"in that review, but, as the Court of Appeals observed, without explaining what that meant (Mem. Opin., p. 8).

Defense counsel promptly objected. The objection was sustained, and a perfunctory instruction to ignore the evidence was given, but the request by Coleman's counsel for a mistrial was denied (RR IV- 34-35).

## C. The Inadequacy of an Instruction

It is useful to begin by recognizing the obvious: Anyone on the jury would infer that Coleman's picture was in that police database because the police had some reason to think that Coleman was a member of a criminal gang or otherwise was affiliated with a gang. Spivey's vagueness about the "evidence" derived from the "gang tracker" hardly mattered.

12

The Court of Appeals held that the instruction adequately cured the harm. The Court of Appeals "presume[d] that the jury followed the trial court's instruction to disregard." Should that presumption apply, however, when the concept of "guilt by association" is implied? That concept is inimical to one of the most basic tenets of the law, as discussed in Part A, *supra*. The Court of Appeals cited a pair of intermediate appellate opinions finding no harm in a witness' allusion to a gang, but no petitions for discretionary review were filed in those cases (Mem. Opin., pp. 9-10). The very fact that this problem continues to arise, in diverse courts around the State, suggests that it is time for this Court to provide guidance. The mere spectre of a mistrial or reversal does not seem to be an effective deterrent.

The Court of Appeals noted that the officer's testimony "was immediately cut off by the defense counsel" (Mem. Opin., p. 9). After that, it was not mentioned again. *Id.* Thank goodness for that, but the sound of one firecracker can be loud enough. The Court of Appeals also pointed out that "Officer Spivey did not provide any detail as to which gang Coleman was affiliated with nor did she expand on any information surrounding the gang tracker database" (Mem. Opin., p. 9). It is impossible to know, however, if the lack of clarification helped or hurt, once the horse was out of the barn. Say "Gang" and most people will think of the Cosa Nostra, the Crips or Bloods, MS-13, or the kind of motorcycle gangs which were involved in the recent Waco incident. The only thing the jurors would know

13

for sure was that this "gang," whatever its size, principles, or activities, was involved in enough bad things to justify being monitored by the police. The Court of Appeals said that Spivey's particular statement was not "flagrant" or "offensive," but that misses the point: criminal gangs are inherently offensive to jurors, and the risk of tainting the guilt-stage deliberations is genuine and substantial.

It is true that there have been many cases, spanning decades, which have relied upon the adequacy of a curative instruction when extraneous misconduct is dredged up by a witness. *See Allen v. State*, 513 S.W.2d 556 (Tex. Crim. App. 1974) and cases cited therein. In most of those cases, however, the evidence concerned a defendant's own conduct or reputation, and the nature of the extraneous misconduct was clear enough that a jury would not be invited to speculate about "what else" a defendant might have done. Once evidence of gang affiliation appears, however, the jurors' imaginations can run wild. It may well be futile, or even counterproductive, to tell jurors to "pay no attention to that gang of men behind the curtain."

## PRAYER FOR RELIEF

Wherefore Coleman prays that discretionary review be granted as to both questions.

Respectfully submitted,

/s/ Danny K. Easterling
**Danny K. Easterling**
Easterling & Easterling, PC
Texas Bar No. 06362100
1018 Preston, 6th Floor
Houston, TX 77002
(713)228-4441
E-mail: eaepc@swbell.net

Counsel for Appellant,
Court-appointed on appeal.

## CERTIFICATE OF COMPLIANCE

I certify that this petition was prepared using Wordperfect with fourteen-point font, and twelve-point font for footnotes, in Times New Roman typeface. Omitting the portions not included for the word limit, this petition contains 3100 words.

/s/ Danny K. Easterling
Danny K. Easterling

# CERTIFICATE OF SERVICE

I certify that a copy of this petition has been served on counsel for the State

at the following addresses on this the 17th day of June, 2015:

Harris County District Attorney's Office         Lisa McMinn
Appellate Division                               State Prosecuting Attorney
Attention: Melissa Hervey                        P.O. Box 12405
1201 Franklin, Suite 600                         Austin, TX 78711
Houston, TX 77002


/s/ Danny K. Easterling
Danny K. Easterling

16